IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

RICHARD MINARD,                                                      CV 04-958 TC

Plaintiff,                                   OPINION AND ORDER

v.

JOANNE B. BARNHART
Commissioner of Social Security,

Defendant.

---

COFFIN, Magistrate Judge:

Plaintiff Richard Minard brings this action pursuant to the Social Security Act, 42 U.S.C. § 405(g), to obtain judicial review of a final decision of the Commissioner of the Social Security Administration ("Commissioner") denying his claim for Disability Insurance Benefits and Supplemental Security Income benefits. For the reasons set forth below, the Commissioner's decision is reversed and this matter is remanded for payment of benefits.

Minard was born on March 27, 1960, and was 43 years old at the time of the hearing. He

has completed his GED. He contends that he has been disabled since August 17, 2000. The medical records accurately set forth Minard's medical history as it relates to his claim. The court has carefully reviewed the records, and the parties are familiar with them. Accordingly, the details will not be recounted here.

The ALJ found Minard had not engaged in substantial gainful activity since his alleged disability onset in August 2000. The ALJ found Minard not fully credible, and that he retains the capacity to perform his past work as a distribution clerk and shipping and receiving clerk.

## DISCUSSION

Minard contends that the ALJ erred by 1) finding him not fully credible; 2) failing to give proper weight to the opinion of Sandra McAllister, PMHNP; 3) incorrectly evaluating his daily activities; and 4) posing an incomplete hypothetical to the Vocational Expert ("VE"). Because the first assertion is dispositive, the court need not reach the other issues.

I. Minard's Credibility

The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and for resolving ambiguities. *Andrews v. Shalala,* 53 F.3d 1035, 1039 (9th Cir. 1995). However, the ALJ's findings must be supported by specific, cogent reasons. *Reddick v. Chater,* 157 F.3d 715, 722 (9th Cir. 1998). Unless there is affirmative evidence showing that the claimant is malingering, the Commissioner's reason for rejecting the claimant's testimony must be "clear and convincing." *Id.* The ALJ must identify what testimony is not credible and what evidence undermines the claimant's complaints. *Id.* The evidence upon which the ALJ relies must be substantial. *Reddick,* 157 F.3d at 724. *See also Holohan v. Massinari,* 246 F.3d 1195, 1208 (9th Cir. 2001). General findings (e.g., "record in general" indicates improvement) are an

insufficient basis to support an adverse credibility determination. *Reddick* at 722; *see also Holohan,* 246 F.3d at 1208. The ALJ must make a credibility determination with findings sufficiently specific to permit the court to conclude that the ALJ did not arbitrarily discredit the claimant's testimony. *Thomas v. Barnhart,* 278 F.3d 947, 958 (9th Cir. 2002).

In deciding whether to accept a claimant's subjective symptom testimony, "an ALJ must perform two stages of analysis: the *Cotton* analysis and an analysis of the credibility of the claimant's testimony regarding the severity of her symptoms [footnote omitted.] *Smolen v. Chater,* 80 F.3d 1273, 1281 (9th Cir. 1996).

> Under the *Cotton* test, a claimant who alleges disability based on subjective symptoms "must produce objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other symptoms alleged...." *Bunnell,* 947 F.2d at 344 (quoting 42 U.S.C. § 423(d)(5)(A)(1988)); *Cotton,* 799 F.2d at 1407-08. The *Cotton* test imposes only two requirements on the claimant: (1) she must produce objective medical evidence of an impairment or impairments; and (2) she must show that the impairment or combination of impairments *could reasonably be expected to* (not that it did in fact) produce some degree of symptom. *Smolen,* 80 F.3d at 1282 (italics in original).

There is objective medical evidence that Minard suffers from depression, agoraphobia, an adjustment disorder, anxiety, carpal tunnel syndrome and cutaneous nerve injury in the right leg. These impairments could reasonably be expected to cause pain, isolation, and impaired concentration. Therefore, the ALJ may not simply reject Minard's symptom testimony. *Id* To determine whether Minard's testimony is credible the ALJ may consider, for example: (1) ordinary techniques of credibility evaluation, such as a reputation for lying or prior inconsistent statements; (2) unexplained or inadequately explained failure to seek treatment or to follow a

3 - OPINION AND ORDER

prescribed course of treatment; and (3) the claimant's daily activities. *Smolen*, 80 F.3d at 1284.

Minard testified that he resides, since April 2002, in a duplex provided by the Housing Authority of Portland in connection with Clackamas County Mental Health ("CCMH"). John Almack, a care coordinator for CCMH, visits Minard every seven to ten days. Minard receives $135 a month in food stamps.

Minard worked essentially full-time from April 1983 to August 2000. He was a shipping and receiving clerk for a manufacturer from April 1983 to January 1991, a delivery driver for a delivery service from January 1991 to September 1998, and a print job and mail distribution clerk for the City of Portland from September 1998 to August 2000. Tr. 55.

Minard testified that he stopped working when he was diagnosed with carpal tunnel syndrome in both hands, and an injured tendon in his right elbow. Tr. 350. He stated that his job required "a lot of heavy lifting, sorting of mail. Any strenuous use of my hands resulted in me – anything I would touch, even just barely graze, felt like razor blades and broken glass." *Id* Touching metal felt like "putting my hand on a burner, on a stove, as far as it feeling like it literally burning my hands." *Id* Minard had surgery on his left wrist in October 2000 and on his right wrist in February 2001.

Minard stated that his hands are fine so long as he doesn't use them excessively or repetitively. He is able to read for about 45 minutes before it hurts to turn the page. He finds it "very difficult" to leave his house, and cannot stay focused on any task long enough to complete it. Tr. 353. When asked whether he could perform household chores, Minard responded "Vacuum cleaner, that kind of stuff, a lot of the problem with housework, like I said, is being able to stay focused on anything long enough to complete it." Tr. 353. He only leaves the house

when he has to. Tr. 356. He "forces himself" to go to the grocery store once a month, and "even then a lot of times I find myself having to turn around and leave." Tr. 356-57. He does not trust himself to use the stove, and uses the microwave oven or eats out of the can. *Id*

Minard testified that the last three toes on his right foot are consistently numb, and that if he is on his feet for a long period of time they feel as though they are on fire and it becomes difficult to walk. He has no friends or family. He takes Wellbutrin, and thinks it helps "70 percent." Tr. 357.

The ALJ stated:

> The allegations of the claimant are not entirely credible in light of the treatment record. The claimant did not seek treatment for any complaints of ongoing hand symptoms for almost 2 years after his carpal tunnel surgeries. He was treated for warts but no other hand complaints (Exhibit 10F). Not until January 2003, when he was seen by a neurologist for complaints of foot pain and numbness did he report his carpal tunnel surgeries had not improved his symptoms (Exhibit 14F). EMG studies at that time were normal (Exhibit 14F-180). Similarly, his allegations of debilitating mental difficulties are not credible in light of his minimal treatment. While the claimant has received extensive case management services related to obtaining housing and food stamps, etc., he has undergone very little treatment for any mental symptoms. He indicates he rarely leaves the house. However, he also reports he does leave when he has to. Although he complains of difficulty focusing and difficulty leaving the house, the claimant has expressed interest in becoming a personal care attendant or a driver/sales worker (Exhibits 13F-178, 8E-60). Tr. 19.

The record indicates that Minard complained to a CCMH counselor in August 2001 that his carpal tunnel symptoms were returning. Tr. 239. Minard sought mental health counseling because he was unable to find work, he was evicted from his home due to his inability to make mortgage payments, and he had become so depressed and disorganized that he was unable even to seek employment. *Id* Given Minard's mental status, his failure to seek medical attention for

5 - OPINION AND ORDER

his carpal tunnel symptoms is not a convincing reason to discredit him.

The Commissioner concedes that the ALJ erred in characterizing Minard's mental health care as "minimal." In fact, the record reflects that Minard sought and received extensive counseling for his mental health. Tr. 223-303; 306-319.

The ALJ asserts that Minard's desire to obtain work as a personal care attendant or driver/sales worker contradicts his inability to concentrate and difficulty leaving his home. In March 2003 Minard's care coordinator wrote that Minard "did express some interest in becoming a personal care attendant." Tr. 307. In September 2002 Minard completed a Vocational Rehabilitation Services plan in which he listed his employment goal as driver/sales worker. Tr. 102. His employment counselor wrote:

> Current active diagnosis is adjustment disorder with depressive and
> anxiety features. He continues to be disorganized in his functioning,
> has difficulty focusing and concentrating well enough to accomplish
> his activities of daily living. He has required intensive case management
> provided by Clackamas County Mental Health. This is a significant
> barrier to Richard being personally effective enough to succeed at
> finding employment, and would likely be a barrier to maintaining em-
> ployment. He has difficulty setting priorities and adhering to an
> according plan of action. Tr. 114.

Minard's expressed desire to work does not undermine his credibility as to his symptoms and limitations. There is no evidence of malingering, to the contrary, Minard's work history and attempt at vocational rehabilitation add to his credibility. The ALJ's determination that Minard is not fully credible is not supported by clear and convincing reasons or substantial evidence.

The decision whether to remand for further proceedings or for immediate payment of benefits is within the court's discretion. *Harman v. Apfel,* 211 F.3d 1172, 1178 (9th Cir.), *cert. denied,* 531 U.S. 1038 (2000). A remand for an award of benefits is appropriate when no useful

purpose would be served by further administrative proceedings, or when the record has been fully developed and the evidence is not sufficient to support the Commissioner's decision. *Rodriguez v. Bowen*, 876 F.2d 759, 763 (9th Cir. 1989).

The Ninth Circuit has established a three-part test "for determining when evidence should be credited and an immediate award of benefits directed." *Harman v. Apfel,* 211 F.3d at 1178. The court should grant an immediate award of benefits when:

> (1) the ALJ has failed to provide legally sufficient
> reasons for rejecting such evidence, (2)
> there are no outstanding issues that must be
> resolved before a determination of
> disability can be made, and (3) it is clear from the
> record that the ALJ would be required to find the
> claimant disabled were such evidence credited.

*Id.* The second and third prongs of the test often merge into a single question: Whether the ALJ would have to award benefits if the case were remanded for further proceedings. *See id.* at 1178.

The Vocational Expert ("VE") testified that a hypothetical person who was unable to maintain attention and concentration for eight hours a day or five days a week would be unable to perform Minard's past relevant work and unable to maintain employment. Tr. 366-369. If credited, Minard's testimony, coupled with the testimony of the VE, establishes that Minard cannot work on a regular and sustained full-time basis and, therefore, he is disabled. The court, therefore concludes this matter should not be remanded for further proceedings. *See Schneider v. Comm'r,* 223 F.3d 968 (9th Cir. 2000). *See also Reddick v. Chater,* 157 F.3d 715, 729 (9th Cir. 1998) ("We do not remand this case for further proceedings because it is clear from the administrative record that Claimant is entitled to benefits.")

/ / /

## CONCLUSION

For these reasons, the court REVERSES the decision of the Commissioner and REMANDS this matter pursuant to sentence four of 42 U.S.C. § 405(g) for the calculation and award of benefits.

IT IS SO ORDERED.

Dated this 8th day of September, 2005.

_____
THOMAS M. COFFIN
United States Magistrate Judge